Whitaker, Judge,
delivered the opinion of the court:
Plaintiff is a partnership trading under the name of Morton M. Eose, and consisting of Esther Eose and Morton M. *477 Rose, the latter acting individually and as Trustee for Constance Rose and Terry Rose. For the purposes of this opinion, it will be treated as an entity. It sues to recover liquidated damages assessed against it.
Plaintiff entered into a contract with defendant on January 9, 1948 to furnish it with 1,929,000 pairs of cotton drawers at $0,173 each. It was agreed that 175,410 pairs were to be furnished by the last day of each month from February to November 1948, both inclusive, and 174,900 pairs were to be furnished by December 31, 1948. Plaintiff did not deliver any in February, only 32,000 in March, 112,000 in April, and by May 31 it would have been 446,240 behind, except for the cancellation on May 27 of plaintiff’s right to deliver 398,230 units.
On all deliveries after the due date the contracting officer assessed liquidated damages at the contract rate of % of 1 per cent of the price of each unit for each day of delay.
1. Promptly after the cancellation of the 398,230 units, defendant offered a contract to Benham Underwear Mills for these units, but this was not accepted by Benham Underwear Mills until July 13, 1948. It called for delivery of 38,230 pairs on July 31, and 90,000 pairs on the last day of each of the following months through November 30, 1948.
Defendant charged plaintiff with liquidated damages for the period between the due date under plaintiff’s contract and the promised or actual delivery date under the substituted contract, whichever was earlier. Defendant did not charge plaintiff with excess costs, since it secured these units for $3,781.15 less than the amount at which plaintiff had agreed to furnish them.
Defendant secured the units under the substituted contract as soon as it reasonably could, and, since that was later than plaintiff had agreed to furnish them, defendant is entitled to collect liquidated damages for the delay.
2. Under the contract with plaintiff, defendant agreed to furnish the sizes for the units to be delivered in February on the date of the award. It was six days late in doing so. By Change Order defendant extended the time for the February deliveries five days. Plaintiff accepted this change order without protest, and, therefore, there can be no re *478 duction in the liquidated damages assessed on account of this delay on defendant’s part.
But plaintiff says a five-day extension should have been granted for deliveries for each succeeding month. We are unable to see any justification for this position. The tariff of sizes for subsequent months, except as noted hereinafter, was furnished on or before the due date, and, hence, plaintiff was obligated to supply them within the time specified.
3. Plaintiff complains that defendant never furnished it with sizes for May and June deliveries, and this is so. It should have furnished the sizes for May delivery on March 26, and for June delivery on April 26. On March 31 plaintiff was behind in deliveries by 318,820 units, and only a little less than this on March 26. On April 30 it was behind 414,-230 units, and a little less than this on April 26. On May 27 plaintiff was still delivering garments on its March quota, and it did not finish its April quota until July 14. Until plaintiff caught up on its deliveries there was no point in defendant’s furnishing sizes for future deliveries. The 398,230 units cancelled from plaintiff’s contract was more than the amount due for May and June. Having cancelled these units, there was no point in furnishing plaintiff the sizes therefor.
When defendant on May 27 terminated plaintiff’s right to deliver the 398,230 units, plaintiff then had on hand material furnished by defendant for 400,000 units and the tariff of sizes therefor. This was enough for more than the amount to be delivered for two months. Sizes for subsequent deliveries were furnished on or before time, except for the deliveries in October, which was four days late, but this seems not to have delayed plaintiff, since no complaint is made thereof.
The delays in delivery were plaintiff’s own fault. On February 6 plaintiff was using less than 8 per cent of its labor force on the contract in suit. On March 26 it was using about 231/2 per cent, and by May 29, 57y2 per cent. By more concentration on its contract with defendant, plaintiff could have made deliveries on time and avoided liquidated damages.
*479 Plaintiff is not entitled to recover. Its petition will be dismissed.
LaRamoee, Judge; Madden, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner C. Murray Bernhardt, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a partnership trading under the name of Morton M. Eose, and consisting of Esther Eose and Morton M. Eose, the latter acting individually and as Trustee for Constance Eose and Terry Eose, with its office and factory at Philadelphia, Pennsylvania.
2, On December 8, 1947, plaintiff submitted to defendant its bid for 2,000,000 pairs of cotton drawers at $0,173 each on bid forms provided by defendant calling for opening on December 11, 1947. The bid provided in part:
In compliance with your invitation for bids dated 21 November 1947 (Serial No. QM-30-280-48-312) and subject to all the conditions thereof, the undersigned, Morton M. Eose * * * hereby * * * agrees upon receipt of written notice of the acceptance of this bid within 30 calendar days * * * after the date of opening of the bids, to execute the form of contract described in the above invitation for bids * * *.
$ $ $ $ $
Tariff of sizes applicable to the quantity awarded for delivery during the month of February 1948 will be furnished successful bidders at time of award.
* it * # 4¡
NOTICE OF AWARD
Bidder will indicate whether or not collect telegraphic notice is desired.
If award is to be made to you Yes or No Yes
If award is not to be made to you Yes or No No
3.On January 8, 1948, plaintiff sent defendant, at the latter’s request, the following telegram:
Eeurwire Invitation QM30-280-48-812 drawers cotton shorts we hereby extend you thirty day additional *480 for acceptance of our bid. However, delay in making award may necessitate our being granted additional time for initial deliveries.
4. On Friday, January 9, 1948, at 5:83 p. m., defendant dispatched from its New York City office the following collect telegram to plaintiff:
REURBID INVITATION QM 30-280-48-312 CONTRACT NO QM 6504 DATED 9 JANUARY 1948 AWARDED YOU FOR 1,929,000 DRAWERS, COTTON, SHORTS AT $.173 PER PAIR ADVISE WITHIN 48 HOURS SHIPPING. INSTRUCTIONS FOR GOVERNMENT FURNISHED PROPERTY END
The telegram was received at the Philadelphia office of the Western Union on Friday, January 9, at 8: 09 p. m., which was after the close of plaintiff’s business day. Plaintiff’s plant was closed on Saturday and Sunday, January 10 and 11, and plaintiff did not receive the telegram until Monday, January 12, at 8:30 a. m.
5. The parties entered into contract W30-280-qm-6504 as of J anuary 9, 1948, whereby plaintiff agreed to furnish and deliver to defendant 1,929,000 pairs of cotton drawers at $0,173 each for a total of $333,717. The record does not disclose the actual date of contract execution. The contract provided:
Quantities by size listed below are for delivery during February 1948.

Sine Quantity StoeJc No.

OD-30-Small- 82,010 55-D-401
OD-34-Medium_ 03,400 55-D-402
Quantities by size for the balance will be furnished contractor approximately 35 days in advance of the beginning of the calendar month in which delivery is scheduled.
*****
Acquisition Cost ^ , „ .„ of Additional
^ , „ .„ Materials to be Furnished by the Government Material
Cloth, Cotton, Print, 3.3 oz. O. D. 9, 35"___$.23 per lin. yd.
*****
DELIVERY SCHEDULE
175,410pair by 29 February 1948.;
175,410pair additional by 31 March 1948;
175,410pair additional by 30 April 1948;
' 175,410 pair additional by 31 May 1948;'
*481 175,410pair additional by 30 June 1948;
175,410pair additional by 31 July 1948;
175,410pair additional by 31 August 1948-;
175,410pair additional by 30 September 1948;
175,410pair additional by 31 October 1948;
175,410pair additional by 30 November 1948;
174,900 pair additional by 31 December 1948.
$ $ $ $ $
Delays-Liquidated Damages Clause
If tbe Contractor refuses or fails to make delivery of the materials or supplies within the time specified, or any extension thereof, the actual damage to the Government for the delay will be impossible to determine, and in lieu thereof the Contractor shall pay to the Government, as fixed, agreed, and liquidated damages for each calendar day of delay in making delivery, the amount set forth in the specifications or accompanying papers, and the Contractor and his sureties shall be liable for the amount thereof: Provided, however, That the Government reserves the right to terminate the right of the Contractor to proceed with deliveries or such part or parts thereof as to which there has been delay, and to purchase similar material or supplies in the open market or secure the manufacture and delivery thereof by contract or otherwise, charging against the Contractor and his sureties any excess cost occasioned the Government thereby, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere: Provided further, That the Contractor shall not be charged with liquidated damages, or any excess cost when the delay in delivery is due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor, including, but not restricted to, acts of God or the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, and delays of a subcontractor due to such causes unless the Contracting Officer shall determine that the materials or supplies to be furnished under the subcontract are procurable in the open market, if the Contractor shall notify the Contracting Officer in writing of the cause of any such delay, within ten (10) days from the beginning thereof, or within such further period as the Contracting Officer shall, with the approval of the Department head or his duly authorized representative, prior to the date of final settlement of the contract, grant for the giving of such *482 notice. The Contracting Officer shall then ascertain the facts and extent of the delay and extend the time for making delivery when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within thirty (30) days, by the Contractor to the Department head or his duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for making delivery shall be final and conclusive on the parties thereto.
STIPULATIONS COVERING DAMAGES POE DELAY IN PERFORMANCE
If the Contractor refuses or fails to make delivery of materials or supplies within the time specified, or any extension thereof, the actual damage to the Government will be impossible to determine. Therefore, subject to the terms and conditions of the above paragraph headed DELAYS-LIQUIDATED DAMAGES CLAUSE the Contractor shall pay to the Government, as fixed, agreed, and liquidated damages for each calendar day or delay in making delivery a sum equal to one fifth of one percent (y5 of 1%) of the price of each unit for each day’s delay after the date, or dates specified for deliveries.
ífc í¡t sjc sfs #
Article 16. Disputes (As amended). — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact which may arise under this contract, and which are not disposed of by mutual agreement, shall be decided by the Contracting Officer, who shall mail to the Contractor a written notification of his determination. Within 30 days from said mailing the Contractor may appeal to the Secretary of War or his duly authorized representative whose decision shall be final and conclusive upon the parties. Pending decision of a dispute hereunder the Contractor shall diligently proceed with the performance of this contract.
6. a. The approximate due dates in 1948 for the furnishing of tariffs of sizes,[1] the dates borne on the tariffs mailed by defendant, and the dates they were received by plaintiff are shown in the following schedule:

*483

The tariff of sizes for February deliveries was required by defendant’s form of bid to be furnished plaintiff by the date of award (January 9 in this case), but was not furnished until January 15. Defendant did not furnish tariffs of sizes for May and June 1948.
5. On March 26, 1948, when the tariff of sizes for May deliveries was due, plaintiff was in default in the delivery of 143,410 garments, and on April 1,1948, the default increased to 318,820 garments.
7. On February 3, 1948, plaintiff wrote defendant as follows:
We are writing at this time to request a fifteen day extension of deliveries under the above contract. Due to the fact that award was not made until January 10 and cutting schedule for February deliveries was not received by us until January 15, we believe this request is in order and should be granted.
8. By Modification “A” Change Order to the contract, dated February 19, 1948 and received by plaintiff on March 23, defendant granted plaintiff an extension of five days to March 5 for deliveries due in February to compensate for defendant’s delay in furnishing plaintiff the tariff of sizes for that month on January 15 instead of January 9 as required. Plaintiff made no timely appeal from the change order. The change order made no finding as to the date when defendant furnished plaintiff written notice of acceptance of plaintiff’s bid.
*484 9. On March 25,1948, plaintiff wrote defendant as follows:
This will acknowledge receipt of Modification “A” on Contract #W30-280-qm-6504, O. I. 2467.
However, we note that this applies only to the first delivery date. We believe that the terms of this change-order should apply to every succeeding delivery date.
10. By letter dated March 30, 1948, defendant warned plaintiff that it would have to terminate the contract for default and repurchase in the open market against plaintiff’s account unless the status of the contract was greatly improved.
11. On April 30, 1948, plaintiff wrote the Contracting Officer as follows;
We note you have deducted liquidated damages in making payment to us for the first shipment against Contract QM 6504, drawers, cotton, shorts.
We refer you to our telegram of January 8,1948 with reference to the bid upon which this contract is based. In our telegram to you we extended the time for acceptance of our bid, but the telegram further reads “However, delay in making award may necessitate our being granted additional time for initial delivery”.
Since notice of award was not received by us until after the thirty day period originally granted had expired, we request that steps be taken to amend the contract so that additional time is granted us and these liquidated damages be refunded to us.
12. On May 13,1948, plaintiff received the following letter from the Contracting Officer, dated May 11, 1948:
This is with reference to your letter dated 30 April 1948 requesting that the contract be amended affording you additional time within which to make deliveries and liquidated damages be refunded to you under Contract W30-280-QM-6504 (O. I. 2467).
Your request is predicated on the fact that you extended the acceptance of the contract for 30 days in telegram dated 8 January 1948 but further stated, “However, delay in making award may necessitate our being granted additional time for initial delivery.”
In connection therewith, please be advised that the records of this office disclose that Bid. No. QM-280-48-312 dated December 8, 1947 provided at least 30 days *485 from date of opening for Government to accept this bid. The bids were opened 2:00 p. m., 11 December 1947 and Contract W30-280-QM-6504 was awarded to you on the ninth day of January 1948 which was within the thirty day period. Therefore, your extension of the acceptance period was not needed. _
In addition to the foregoing, this office in Modification “A”, Change Order dated 19 February 1948 extended the initial delivery schedule for a period of five days due to the failure of the Government to furnish Tariff of Sizes at the time of the award.
It is therefore regretted that your request for the amendment of the contract to allow additional time to make delivery cannot be granted.
Plaintiff made no timely appeal from defendant’s foregoing refusal to grant the requested extension.
13. On May 21, 1948, plaintiff wrote the Contracting Officer as follows:
On going over our records on above reference contract, we find we have not received schedule of sizes for May delivery.
Kindly forward this information to us by return mail.
The record contains no reply by defendant to plaintiff’s foregoing letter.
14. a. On May 27, 1948, plaintiff received the following letter from the Contracting Officer dated May 25:
Due to your failure to make deliveries in conformance with the contractual requirements, your right to deliver the 398,230 Drawers, Cotton, Shorts scheduled to be delivered by 30 April 1948 is hereby terminated. This is to be considered as a “Finding of the Facts” by the Successor Contracting Officer, in accordance with the contract provisions.
Kepurchase of the terminated quantity will be made in the open market or otherwise and any excess costs occasioned the Government will be charged to you.
5. On May 27, 1948, at the time it received the foregoing termination notice, plaintiff was in default in the delivery of 286,830 garments and had on hand government-furnished material and tariff of sizes for about 400,000 garments which *486 was not returned to defendant, or enough material for over two months production at the contract rate. On June 1, 1948, except for the termination of 898,230 garments on May 27, plaintiff would have been in default in the delivery of 446,240 garments. On May 27 plaintiff was still delivering garments due on its March quota, and did not finish its April quota until July 14.
o. Defendant’s failure to give plaintiff a tariff of sizes for the May quota on March 26 when it was due was not responsible for plaintiff’s delay in increasing its payroll to a point adequate to meet contract requirements. From the outset of the contract plaintiff increased its payroll at a gradual rate until May 29, when the payroll reached a peak and remained at that approximate level until July 24, when it commenced a gradual decline.
d. While inexperienced help and an initially high rate of rejections in its plant contributed to plaintiff’s failure prior to May 29 to reach a rate of production adequate to meet its contract requirements, the primary cause was its failure to assign a sufficient number of its personnel to the contract in suit at an early enough date. During the period from February 6 to November 19,1948, plaintiff had a total labor force ranging from 300 to 320 employees. On February 6 plaintiff was using 7.8% of its labor force on the contract in suit; on March 26 it was using 23.4%, and by May 29 it was using 57.5%. The record implies that the balance of plaintiff’s total labor force not assigned to the garment contract was engaged in plaintiff’s other commitments.
e. Plaintiff’s production under the contract fluctuated in general accordance with the number of operators employed and their increasing experience. Thus, during the nine-week period from May 29 to July 24 plaintiff’s payroll and deliveries were at a peak, and during the succeeding nine-week period from July 24 plaintiff’s deliveries were only slightly under the preceding nine-week period while its payroll was substantially less. Although its actual deliveries in June were substantially in excess of those in July and the average number of employees engaged in the con *487 tract in the latter month, was only slightly less than in June, the apparent loss in production was primarily due to the closing of the plant for vacations during one week in July, and was not due to sharp reductions in personnel made because of defendant’s earlier failures to provide tariffs of sizes for the May and June quotas.
f. Although contract requirements for the month of September 1948 called for delivery of 175,410 garments, and the tariff of sizes for that month’s delivery was furnished plaintiff on July 20 for only 128,020, plaintiff maintained sufficient personnel to deliver 176,210 garments in September.
15. a. By contract dated June 16, 1948, and accepted by the contractor July 13,1948, defendant contracted with Ben-ham Underwear Mills for the terminated portion of plaintiff’s contract, or 398,230 pairs of cotton drawers at $0.1775 each, a total of $70,685.83. The repurchase contract was let to Benham with reasonable promptness after termination of that portion of plaintiff’s contract. The repurchase contract provided discount payment terms of 8%-20 days, and delivery according to the following schedule:

Pairs 19Í8

38,230_ by July 31
90,000_Additional by August 31
90,000_ ” September 30
90,000_ ” October 31
90,000_ ” November 30
Benham actually delivered 396,888 garments from August 4 through November 30, 1948.
5. Because of the payment to Benham by defendant within the payment discount period provided by the repurchase contract, the cost to defendant of the repurchased garments was $3,781.15 less than the cost to defendant would have been under plaintiff’s contract. .Plaintiff was not credited with this saving in the computation of the liquidated damages charged against it.
16. a. Liquidated damages in the amount of $21,970.48 were withheld by defendant from plaintiff for delays in deliveries of the garments and have not since been paid. The following cumulative schedule presents the. number of garments delinquent at the close of. each monthly delivery period under the contract:

*488

5. Of the $21,970.48 charged plaintiff as liquidated damages, $6,430.71 represented liquidated damages for delinquency in delivery of garments due in May and June, 1948, and $3,409.55 represented liquidated damages for delinquencies up to the promised (or actual, whichever were earlier) dates of delivery under the Benham repurchase contract.
o. If the contract had been modified so as to extend the delivery date of each month’s quota following February 1948 by five days, the liquidated damages chargeable against plaintiff would have amounted to $19,623.97, or $2,346.51 less than the amount of liquidated damages actually withheld. Of the $2,346.51, $606.92 would represent the reduction of liquidated damages for deliveries due in May and June 1948.
17. On March 28, 1949, the plaintiff made a written request of the Contracting Officer to make findings of fact as to the dates on which defendant furnished tariffs of sizes to plaintiff, and to determine the dispute as to whether plaintiff was entitled to an extension of time due to defendant’s initial failure to give plaintiff a written notice of contract award within 30 days from bid opening, as related in Finding 4, supra.
18. On April 11, 1949, the Contracting Officer advised plaintiff in writing as follows:
*489 Eeference is made to your letter dated 28 March. 1949, wherein it is requested that the Contracting Officer make a determination of “Disputes” pursuant to Article 16 of your Contract QM 6504 (01 2467), Drawers, Cotton Shorts. Your request is predicated on the following statements:
a. that the contract was not awarded within thirty (30) calendar days from the date of opening of the bids;
b. that quantities by size were not furnished you within the times specified in the contract.
In this connection, your attention is invited to Article 16 of the above-mentioned contract which provides that all disputes concerning questions of fact under this contract which are not disposed of by mutual agreement shall be decided by the Contracting Officer “except as otherwise specifically provided in this contract”.
You are advised that the “Disputes” outlined by you in your letter are otherwise specifically provided for under the “Delays-Liquidated Damages Clause” of your contract. The above-mentioned clause provides that an extension of time for making deliveries can be granted when the cause of delay in delivery is unforeseeable without the fault or negligence of the contractor and beyond his control. This clause further provides that the contractor shall notify the Contracting Officer in writing of the cause of the delay within ten (10) days from the beginning thereof.
In accordance therewith, an investigation undertaken by this office indicates the following:
a. that Contract QM 6504 (OI 2467), Drawers, Cotton Shorts was signed by you without protest, and that notice of award was forwarded you within 30 calendar days from the date of opening of the bids.
b. that in Findings of Fact and Decision dated 19 February 1948, you were granted an extension of five (5) days for making the initial delivery of 175,410 pairs of Drawers, Cotton Shorts under the above-mention [sic] contract; that this extension was granted to you because the schedule of sizes was not furnished at the time of the award, and that there was no appeal taken from these findings.
Any other delay which may have been occasioned by not receiving size instructions on time throughout the contract cannot be considered at this time, inasmuch as your failure to give notice within ten (10) days from the beginning thereof, made it impossible for this office *490 to take necessary remedial action and to investigate such causes as they arose.
This letter does not waive any of the rights of the Government under the Contract.
19. On April 25,1949, plaintiff appealed from the decision of the Contracting Officer and on December 7, 1949, the Armed Services Board of Contract Appeals, without passing on the merits, dismissed the appeal because plaintiff had failed to file timely protests as to defendant’s failures to furnish tariffs of sizes and a timely notice of award.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law plaintiffs are not entitled to recover and their petition is dismissed.

 The contract contained only approximate time requirements for furnishing tariffs of sizes. See Finding 5, supra.