**WYOMING NATIONAL BANK OF WILKES-BARRE, PENNSYLVANIA**

v.

**UNITED STATES.**

**BO–JACK MANUFACTURING COMPANY, Third Party.**

No. 445-54.

United States Court of Claims.
July 19, 1961.

512

Bernard Gordon, Washington, D. C., for plaintiff. Joseph D. Danzansky, Robert F. Rolnick, and Danzansky & Dickey, Washington, D. C., on the briefs.

Charles V. Linshaw, Philadelphia, Pa., for third-party defendant.

Lawrence S. Smith, Washington, D. C., with whom was William H. Orrick, Jr., Asst. Atty. Gen., for defendant

LARAMORE, Judge.

This is a suit brought by The Wyoming National Bank of Wilkes-Barre, Pennsylvania, the successor corporation to the named assignee of a Government contract, the First National Bank of Plymouth, Pennsylvania. The suit is brought to recover sums allegedly wrongfully withheld as liquidated damages.

The questions presented, as set forth in plaintiff's brief, are (1) Whether the refusal by the Armed Services Board of Contract Appeals to grant plaintiff's predecessor's request for intervention constituted a denial of plaintiff's predecessor's rights under the "Delays—Liquidated Damages" clause of the contract so as to entirely disallow the Government's claim for any liquidated damages on the grounds that they have failed to comply with the conditions of the contract; (2) Whether under a liquidated damages provision in a contract, where the only portion of the provision which fixes the amount of the liquidated damages is made applicable to the situation where the contractor refuses or fails to make delivery of the materials or supplies within the time specified, or any extension thereof, the Government is entitled to liquidated damages for that part of the contract which has been terminated.

The facts are summarized as follows: Plaintiff in 1953 purchased all the assets of the First National Bank of Plymouth, Pennsylvania, the assignee of the Bo-Jack contract.

The contract involved in this action, W30–280–qm–5947, dated October 30, 1947, was between the Bo-Jack Manufacturing Corporation and the War Department. It provided that Bo-Jack would manufacture for the Government 270,000 pairs of baker's and cook's white trousers for $1.99 per pair, the total contract price being $537,300. The contract also provided that the contractor would furnish all materials and the contract was executed on behalf of Bo-Jack by David Rose, President.

The delivery schedule, as amended, called for deliveries over the period December 31, 1947, to September 30, 1948. The contractor became delinquent in delivery under the contract. As of September 24, 1948, six days prior to the date on which deliveries of all 270,000 garments were to have been completed, the contractor had shipped only 92,190 pairs. The contractor asked for but did not receive extension of time to avoid assessment of liquidated damages as provided in the contract, and on October 1, 1948, the successor contracting officer terminated the contract for default as to 163,658 undelivered units. The work in process was not terminated. Bo-Jack completed and delivered a total of 106,342 pairs of trousers.

On October 26, 1948, Bo-Jack represented by counsel, appealed the action of the contracting officer in terminating the contract and stated that failure to make deliveries was occasioned by acts of the defendant in not making a prompt award of the contract. A request was made for an extension of delivery date so as to eliminate liquidated damages, which request summarized the reasons therefor. The principal reason asserted for the extension was an alleged shortage of the cotton drill out of which the trousers were to be manufactured. On February 14, 1949, the aforesaid request for an extension of time was denied by the suc-

cessor contracting officer. The appeal was, at the request of Bo-Jack's attorney, placed on the suspense docket, and on October 18, 1949, the Appeals Board granted a Government motion to remove the case from the suspense docket and set it for hearing on December 6, 1949. Notice was sent to Bo-Jack's attorney by registered mail and a return receipt acknowledged its delivery.

Mr. Schwag, Bo-Jack's attorney, wrote the Board advising it that Mr. David Rose, the President and only witness of the appellant company, was sentenced to serve a term in the Federal penitentiary, and again requested that the matter be placed on the suspense docket. On December 1, 1949, the Board notified Mr. Schwag that the case should proceed as set and that, if necessary, testimony of Mr. Rose could be taken by deposition.

Mr. Schwag then advised the Board on December 2, 1949, that neither he nor his client would be present at the hearing and that under the rules the matter could proceed *ex parte,* and that he was requesting leave to take Mr. Rose's deposition. There is no evidence that the deposition was ever taken or that any attempt was made to take it.

The Armed Services Board of Contract Appeals hearing was held on December 6, 1949. On this same day by letter Mr. Max Rosen wrote the recorder of the Board referring to a telephone conversation of the previous day and enclosed notice of appearance on behalf of himself and a Mr. Roberts for the First National Bank of Plymouth, Pennsylvania, indicating an intention to file a petition to intervene. This letter was received by the Board on December 9, 1949.

Under date of January 14, 1950, Mr. Rosen sent his petition to the Board and requested to be heard on it. In due course the petition was denied.

Subsequently on July 27, 1950, the Armed Services Board of Contract Appeals rendered its written opinion and decision sustaining the action of the contracting officer and denied the petition to intervene.

In 1954 plaintiff filed its petition in this court. Defendant moved to summon Bo-Jack, the contractor, to appear as a third party, to defend its interest and to answer defendant's claim against it. This motion was allowed and Bo-Jack is now a party to these proceedings.

The Government assessed liquidated damages against Bo-Jack in the amount of $193,805.37. Of this sum it has collected $54,201.99 by setoff against sums otherwise due under the contract, and makes claim against Bo-Jack in this suit for the balance of $139,603.38.

In the instant suit Bo-Jack is represented by counsel and answered the defendant's claim. Neither the contractor nor its counsel appeared at the trial although duly notified thereof.

Neither the contractor nor the plaintiff offered evidence at the trial on the issues before the Board other than the record of that proceeding.

Respecting the issue of the shortage of cotton drill, the evidence here discloses that the contractor's supplier was ready, willing and able to supply all of this type of cloth that Bo-Jack needed to perform its contract with the Government. As a matter of fact, it has been shown that at the time the contractor was contending there was a short supply of the cloth in the textile markets, the contractor was actually selling a substantial quantity of this same material to another company.

Respecting plaintiff's contention that the refusal of the Armed Services Board of Contract Appeals to allow the First National Bank of Plymouth to intervene and that the refusal results in disallowment of the liquidated damage claim, the facts clearly show that any dispute under the contract was between Bo-Jack and the Government. The Board denied intervention, ruling that its jurisdiction was limited to ruling on the matter of the assessment of the liquidated damages and that it had no jurisdiction to determine the priority of the Government to payment of such claim for liquidated damages as against an assignee of the appellant. In this we think the Board

was clearly correct. The dispute was a factual one with the contractor and involved facts relating to the performance of the contract. The rights of the First National Bank of Plymouth were limited to its right to receive money under the contract. If the contractor was entitled to money under the contract, then the Bank as assignee succeeded to those rights. However, as stated, it was clearly a dispute between the contractor and the Government. It was a dispute concerning a question of fact within the limitation of the disputes clause of the contract. Liquidated damages were assessed under the provisions of the contract, and inasmuch as the contractor owed the Government in this respect much more than it had coming, clearly the contractor was entitled to nothing. Consequently, the assignee would also be entitled to nothing.

The attempted intervention by the Bank was for the purpose of getting Board action on a question of law and clearly the disputes clause relates only to questions of fact.

■ Furthermore, even if the Board should have granted intervention and did not, the plaintiff could have fully litigated the matter in this proceeding. Yet it offered no evidence to support its charge that the Board's decision was arbitrary and capricious. Under these circumstances plaintiff is not now in a position to complain of the Board's action.

Plaintiff's next contention is that liquidated damages may not be charged on the terminated portion of the contract. This argument is refuted by the express terms of the contract. The provision entitled "Delays—Liquidated Damages" provides for liquidated damages in the event the contractor fails or refuses to make delivery. It provides further that the Government shall have the right to terminate that part of the contract on which there has been delays, to repurchase in the open market, charge the contractor with excess costs, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere.

■ The Government followed the terms of the contract to the letter and we can find no merit in plaintiff's contention that under the circumstances no liquidated damages could be charged on the terminated portion of the contract. Cf. Rose, et al. v. United States, 131 Ct.Cl. 475, 129 F.Supp. 954.

■ Furthermore, on the merits of the case the evidence discloses and the trial commissioner has found as a fact that the decision of the contracting officer and the Armed Services Board of Contract Appeals was supported by substantial evidence and was not arbitrary and capricious. The contractor had ample opportunity to present evidence at the Board hearing and did not do so. The plaintiff had ample opportunity to present evidence at the trial before the commissioner of this court and did not do so. The contractor sold exactly the same kind of material which was alleged to be in short supply. The contractor's supplier was at all times ready, willing, anxious and able to supply the cloth. Under these circumstances the contractor could have no right of recovery. Consequently the plaintiff, since its only right is to moneys due or to become due under the contract could have no right of recovery and its petition will be dismissed.

The contractor, Bo-Jack Manufacturing Corporation, was made a third party to defend its interest in this suit. It was notified, was represented by counsel, and filed its answer, signed by its President, Mr. David Rose. Neither the contractor nor its counsel appeared at the trial and no evidence was offered on its behalf, although both the contractor and its counsel were notified thereof. Under these circumstances it is evident that the contractor is not contesting the Government's claim for liquidated damages. Defendant is, therefore, entitled to recover of and from the Bo-Jack Manufacturing Corporation the gross amount of $193,805.37 less $54,201.99 already recovered by setoff, leaving a net balance

due of $139,603.38. Judgment for defendant will be entered in that amount.

It is so ordered

JONES, Chief Judge, and DURFEE, MADDEN and WHITAKER, Judges, concur.